1
2
3
4
5
6
7

**THE DISTRICT COURT OF GUAM**

8

| | |
|---|---|
| UNITED STATES OF AMERICA, | CRIMINAL CASE NO. 24-00012 |
| Plaintiff, | |
| vs. | **DECISION AND ORDER** |
| | **ON DEFENDANT'S MOTION TO** |
| RICHARD NIC PAMA ESPEDION | **DISMISS THE INDICTMENT WITH** |
| aka "RICHARD PAMA", | **PREJUDICE** |
| Defendant. | |

9
10
11
12
13
14

## I.    <u>INTRODUCTION</u>

On December 27, 2024, the court granted the United States' Motion to Dismiss Indictment Without Prejudice as to Defendant Richard Nic Pama Espedion, aka "Richard Pama," under Federal Rule of Criminal Procedure 48(a). ECF No. 106. The prosecution stated that dismissal was "appropriate and 'not clearly contrary to manifest public interest.'" ECF No. 105.[1] Now before the court is Defendant's Motion to Dismiss the Indictment with Prejudice (the "Motion to Dismiss with Prejudice"), which challenges the prosecution's reasons for dismissal and seeks to dismiss the Indictment *with* prejudice. ECF No. 108. For the foregoing reasons, the court hereby **DENIES** Defendant's Motion to Dismiss with Prejudice.

---

[1] The court refers to CM/ECF pagination throughout this Decision and Order.

## II.    PROCEDURAL HISTORY

On April 10, 2024, Defendant was indicted on two counts: (1) Possession of Contraband in Prison, in violation of 18 U.S.C. §§ 1791(a)(2), (b), and 18 U.S.C. § 2; and (2) Possession with Intent to Distribute Fifty Grams or More of Methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A)(viii) and 18 U.S.C. § 2. Indictment, ECF No. 1, at 1-2. He pleaded not guilty to both charges. *See* ECF No. 8.

On April 11, 2024, the Magistrate Judge issued a Brady Disclosure Order requiring the prosecution to produce "information or evidence" that "may help bolster the defendant's case or impeach a prosecutor's witness or other government evidence." ECF No. 11, at 2. The court further allowed "the government [to] apply … for a modification of the requirements of this Disclosure Order" if it concluded that disclosure "would compromise witness safety, victim rights, national security, a sensitive law-enforcement technique, or any other substantial government interest." *Id.*

On May 1, 2024, Defendant's cellmate and co-defendant, John Boy Trae Duenas ("Mr. Duenas"), was interviewed by the government after he had pled guilty. *See* Sealed Gov't. Ex. 36. The government interviewed Mr. Duenas two additional times: May 9, 2024, and May 21, 2024. *See id.* On November 4, 2024, defense counsel "requested for copies of any interviews of the co-defendant." ECF No. 64, at 2. On November 5, 2024, the prosecution filed an *Ex Parte* Motion for *In Camera Inspection* to seal the government's three interviews of Mr. Duenas. ECF No. 64; *see also* Sealed Gov't. Ex. 36. The interviews covered "ongoing drug distribution within the Guam Department of Corrections" and the prosecution sought to seal them pursuant to the court's Brady Disclosure Order. ECF No. 112, at 2 (quoting ECF No. 11).  The court orally granted the sealing of the interviews and prosecution's *in camera* inspection motion, instructing the government "to obtain an expedited transcript of the audio recordings." ECF No. 122, at 3;

ECF No. 62-1. Approximately two weeks prior to the court's *in camera* review during trial, on or around November 6, 2024, the prosecution provided defense counsel with brief excerpts from the interviews. *See e.g.*, ECF No. 100, at 141, 177-79. An official, certified, and complete transcript for the three interviews was filed on November 12, 2024. *See* Sealed Gov't. Ex. 36; *see also* ECF No. 122, at 3.

Jury selection began on November 14, 2024, and it was followed by a four-day jury trial from November 18 to November 21. ECF Nos. 74, 77, 78, 79, and 84. On the second day of trial, November 19, the prosecution called Mr. Duenas, the Defendant's cellmate, to testify. *See* ECF No. 100, at 4-32. On direct, Mr. Duenas testified that Defendant owned the drugs that were on Mr. Duenas' bunk located in their cell. *Id.* at 10, 13. He further testified that Defendant would share the drugs with him and that he would, at times, guard the cell for Defendant. *Id.* at 11, 16. The prosecution concluded its direct examination of Mr. Duenas, and defense counsel commenced cross-examination the same day. *See id.* at 33-123. After cross-examination, the court released the jury for the day and discussed how it would proceed with a Jencks Act review of the transcript memorializing Mr. Duenas' three interviews with the government. ECF No. 102, at 137, 123-33. Incidentally, the same transcript, as stated above, is the exact subject matter of the Brady Disclosure Order. ECF No. 112, at 2 (quoting ECF No. 11).

The parties reconvened the following day, November 20, 2024. *Id.* at 134. The court discussed its Jencks Act and *Brady in camera* review of the 106 pages of transcript from Mr. Duenas' interviews that it had performed, *ex parte*, with the prosecution. *See id.* at 143-75. The court ordered the prosecution to disclose parts of the transcript that mentioned an individual named "Ed" as a possible co-owner of the drugs in question. *See id.* at 153-65, 171-72; *see also* Gov't. Ex. 38, ECF No. 79-2, at 5-6. The court also ordered the prosecution to release parts of the interview transcript where Mr. Duenas described the cell as the "drug cell" which he guarded

1  and where he and the Defendant smoked methamphetamine.[2] *See id.* at 144-52; *see also* Gov't.

2  Ex. 38, ECF No. 79-2, at 1-4.

3  Defense counsel received the court ordered disclosures, reviewed them, and then

4  reinitiated cross-examination of Mr. Duenas.[3] *See* ECF No. 100, at 178-208. Defense counsel

5  impeached Mr. Duenas' direct examination testimony by focusing on Ed's co-ownership of the

6  drugs. *Id.* at 195-96. Defense counsel completed cross-examination, and the prosecution

7  conducted a redirect examination. *See id.* at 208-24. Defense counsel then attempted to raise the

8  statements again regarding Ed on recross, but the prosecution objected as "asked and answered",

9  and the court sustained the objection. *Id.* at 234. The prosecution rested its case. *See* ECF No. 79.

10  Defendant did not call any witnesses on his behalf. *See id.* The parties subsequently presented

11  their closing arguments. *See* ECF Nos. 79, 84.

12  The jury deliberated but could not reach a unanimous verdict. *See* ECF No. 90. The court

13  declared a mistrial on November 22, 2024. *See* ECF Nos. 77-79, 84, 90. Thereafter, the court set

14  a status hearing for December 16, 2024, to discuss how the parties intended to proceed. *See* ECF

15  No. 90. Before the status hearing, Defendant filed a Motion to Compel *Brady/Giglio* Material on

16  November 25, 2024, and the United States filed Consolidated Motions *in Limine* on December 3,

17  2024. ECF Nos. 91, 94. Then, on December 27, 2024, the United States filed a Motion to

18  Dismiss Indictment Without Prejudice as to Defendant Richard Nic Pama Espedion aka "Richard

19  Pama." ECF No. 105. The court granted the motion under Federal Rule of Criminal Procedure

20  48(a) that same day. ECF No. 106. Based on the court's dismissal of the indictment without

21  prejudice, the Defendant's *Brady*/*Giglio* motions and the United States' consolidated motions *in*

22  [2] The prosecution had previously disclosed four totally different pages of the interviews with Mr. Duenas. Gov't. Ex.
23  37, ECF No. 79-1, at 2-4. The disclosure included statements from Mr. Duenas alleging Defendant Espedion owned
the drugs and was a member of a Filipino cartel. *Id.* at 4.

24  [3] Defense counsel specifically confirmed to the court that he had received the disclosures, and that he had sufficient
time to review them. ECF No. 100, at 180-81.

1  *limine* became moot.

2        Defendant now moves to have the indictment dismissed with prejudice for two reasons.

3  ECF No. 108, at 1-2. First, "the government failed to disclose exculpatory evidence prior to and

4  during trial. *Id.* The exculpatory evidence, in particular, includes statements made by Mr. Duenas

5  in his interviews discussing "widespread and longstanding dealing of drugs at [the Department of

6  Corrections] by both staff and inmates," including a named government witness, and inmate Ed.

7  *Id.* at 5; *see also* Sealed ECF No. 109, at 1-2 (the named government witness is identified in this

8  sealed supplemental filing). Second, "[t]he government moved under Fed. R. Crim P. 48(a) to

9  dismiss the indictment without prejudice" for an improper purpose, i.e., "to avoid its obligations

10  under *Brady/Giglio* and to gain a strategic advantage." *Id.* at 1-2. He requests a hearing to

11  examine "the extent of the government's *Brady* violations and the government's intent in

12  dismissing the indictment." *Id.* at 9.

13  ### III.   <u>ANALYSIS</u>

14        The question presented to this court is whether the prosecutor's failure to disclose certain

15  alleged exculpatory statements from the government's interviews of Mr. Duenas violates *Brady*

16  and justifies dismissal with prejudice. *See* ECF No. 108, at 4-6. Two weeks prior to the court's *in*

17  *camera* review, the prosecution released excerpts to Defendant from its interviews with the

18  witness, Mr. Duenas. *See* Gov't. Ex. 37, ECF No. 79-1, at 2-4. After its *in camera* review during

19  trial, the court ordered the disclosure of additional excerpts from the government's interviews of

20  Mr. Duenas. *See* Gov't. Ex. 38, ECF No. 79-2. These additional excerpts, found in Exhibit 38,

21  included statements indicating that Ed was a possible co-owner of the drugs, specifically the

22  methamphetamine found in the Defendant's cell on Mr. Duenas' bunk bed. Defendant received

23  these additional excerpts during the middle of his cross-examination of Mr. Duenas and used

24  them to impeach Duenas' testimony. The excerpts released to the Defendant, both by the

1    prosecution and the court, contained Jencks Act and *Brady* material. *See* Gov't. Ex. 37, 79-1;

2    Gov't. Ex. 38, ECF No. 79-2.

3          Defendant now argues that the government allegedly withheld *Brady* statements of

4    "widespread and longstanding dealing of drugs at" the Department of Corrections and the

5    involvement of both the named government's witness and Ed. *See* ECF No. 108, at 5*; see also*

6    ECF No. 109. He argues that the statements are contained in the transcript of the government's

7    interviews of Mr. Duenas. *See id*. The government counters that these statements are broader

8    than the charges against the Defendant and their disclosure would jeopardize an ongoing

9    criminal investigation. *See* ECF No. 102, at 125.

10   **A. IS THERE A *BRADY* VIOLATION RELATING TO WIDESPREAD AND
         LONGSTANDING DEALING OF DRUGS AND THE INVOLVEMENT OF THE**
11       **NAMED GOVERNMENT WITNESS AND ED?**

12         *Brady v. Maryland* confirmed the prosecutorial obligation to disclose evidence that "is

13   material either to guilt or to punishment, irrespective of good faith or bad faith of the

14   prosecution." 373 U.S. 83, 87 (1963). A *Brady/Giglio* violation consists of three elements: (1)

15   "[t]he evidence at issue must be favorable to the accused, either because it is exculpatory, or

16   because it is impeaching;" (2) "that evidence must have been suppressed by the State, either

17   willfully or inadvertently;" and (3) "prejudice must have ensued." *U.S. v. Olsen*, 704 F.3d 1172,

18   1181 (9th Cir. 2013) (quoting *Strickler v. Greene*, 527 U.S. 263, 281-82 (1999)); *see also U.S. v.*

19   *Blanco*, 392 F.3d 382, 387 (9th Cir. 2004). Evidence is material, or prejudice ensues, when

20   "there is a reasonable probability that, had the evidence been disclosed, the result of the

21   proceeding would have been different." *Cone v. Bell*, 556 U.S. 449, 470 (2009).

22         As to the first element, the court must address whether the alleged statements of

23   widespread and longstanding drug dealing at the Department of Corrections by staff and inmates,

24   including the named government witness and inmate Ed, were exculpatory, and thus favorable to

1   the Defendant. While defense counsel was "virtually certain that he overheard" that the named

2   government witness was "involved in the dealing of drugs or intentionally permitted drug

3   dealing to occur at" the Department of Corrections, a thorough review of the transcript from the

4   interviews of Mr. Duenas does not support such sweeping conclusions. ECF No. 109; Sealed

5   Gov't. Ex. 36. As to statements related to Ed and the drugs found in his cell, the court ordered

6   release of these statements as they were indeed exculpatory and impeaching. *See* Gov't. Ex. 38,

7   ECF No. 79-2. The Defendant was able to use these statements to effectively cross-examine Mr.

8   Duenas with the "Ed" statements. *See* ECF No. 100, at 195-96. Based on the court's thorough

9   review, it only released excerpts found in Exhibit 38. *See* Gov't. Ex. 38, ECF No. 79-2. The

10  court opted not to release any other information that would jeopardize an ongoing criminal

11  investigation. *See* Sealed Gov't Ex. 36. In fact, much of the court's review revealed potentially

12  strong inculpatory evidence against the Defendant which had not yet been fully developed. *See*

13  Sealed Gov't Ex. 36. Release of such information could have harmed the Defendant.

14          Defendant further argues that the court ordered disclosures in this case were made

15  pursuant to the Jencks Act for impeachment purposes only and that the court's "attention was not

16  focused on *Brady/Giglio* considerations." ECF No. 108, at 3 n. 1. He contends that "large

17  amounts of *Brady/Giglio* material [] has not been disclosed" from the 106 pages of transcript. *Id.*

18  at 3. This is false. In fact, the Assistant United States Attorney called the court's attention to

19  *Brady's* due process protections not once, but twice during its *in camera* review of the transcript.

20  ECF No. 102, at 162-64. The court reviewed the entirety of the transcript, as it stated on the

21  record, and ordered the disclosure of Jencks and *Brady* material. *Id.* at 176; Gov't. Exs. 37, 38,

22  ECF Nos. 79-1, 79-2. Furthermore, as stated earlier, the Jencks and *Brady*/*Giglio* material relied

23  on the same transcript the court reviewed *in camera*.

24          The second element is not at issue here. There is no question that the requested alleged

*Brady/Giglio* material requested by the defense were not disclosed to the Defendant by the prosecution. Sealed Gov't. Ex. 36. Rather than disclose the alleged *Brady/Giglio* material, the prosecution sought guidance from the court by requesting an *in camera* review to limit disclosure. *See* ECF No. 64.

When there is a compelling government interest, the prosecution can submit the evidence to the court for *in camera* review. *See Pennsylvania v. Ritchie*, 480 U.S. 39, 60 (1987).; *see also U.S. v. Dupuy*, 760 F.2d 1492, 1501 (9th Cir. 1985) ("Consultation with the judge is particularly appropriate when the Government has legitimate reasons for protecting the confidentiality of the material requested, for the trial judge can then weigh the Government's need for confidentiality against the defendant's need to use the material in order to obtain a fair trial."); *United States v. Harmon*, 833 F.3d 1199, 1205 (9th Cir. 2016). After conducting an *in camera* review, the court "would be obligated to release information material to the fairness of the trial." *Ritchie*, 480 U.S. at 60.

The Ninth Circuit Court of Appeals has approved of *in camera* review of sensitive material when the government has an important state interest. *Dupuy*, 760 F.2d at 1501. When conducting *in camera* review, the court has a duty to review the transcript for *Brady* or *Giglio* material before sealing them, and it did so here. *Id.* at 1502; ECF No. 102, at 176 ("[T]he [c]ourt reviewed the **entire** transcript from the witness Duenas's statement in camera last night for about three hours[.]") (emphasis added). During its *in camera* review, the court weighed the prosecution's need for confidentiality against the Defendant's need for the material in order to obtain a fair trial. *See* Gov't. Ex. 38, ECF No. 79-2. The court decided that the information contained within Government's Exhibit 38 should be disclosed to the Defendant for a fair trial. *See* Gov't. Ex. 38, ECF No. 79-2.

As to the third element, Defendant was not prejudiced by the nondisclosure of other

information found in the transcript. *See* Sealed Gov't. Ex. 36. In particular, the alleged statements regarding widespread drug dealing at the Department of Corrections were still being investigated and many of the statements potentially inculpated the Defendant. *See* Sealed Gov't. Ex. 36. Had the ongoing, investigatory statements been released, they would have prejudiced the Defendant's case. The other evidence pertaining to the named government witness was not found in the three interviews of co-defendant, Mr. Duenas. Thus, there has been no prejudice to the Defendant.

In sum, the elements for the *Brady*/*Giglio* test have not been met. Dismissal with prejudice is therefore not justified.

**B. DID THE PROSEUCTION MEET ITS OBLLIGATION TO TIMELY DISCLOSE THE *BRADY* MATERIAL?**

The prosecution must disclose the *Brady* material "at a time when the disclosure would be of value to the accused." *U.S. v. Davenport*, 753 F.2d 1460, 1462 (9th Cir. 1985) (finding that a delay in providing the information was not a due process violation when the defense was able to use it for cross-examination of the witness). "*Brady* does not necessarily require that the prosecution turn over exculpatory material *before* trial." *U.S. v. Gordon*, 844 F.2d 1397, 1403 (9th Cir. 1988) (emphasis in original).

Defendant argues that the prosecution "ignore[d] its obligations before trial" by not turning over *Brady* material, like the "Ed" evidence. *See* ECF No. 108, at 6; *see also* ECF No. 113, at 2. As discussed above, all potential exculpatory and impeachment evidence was provided to defense counsel. *See* Gov't. Ex. 38, ECF No. 79-2. Moreover, the court provided defense counsel with time to examine the disclosed excerpts regarding the possible co-owner of the drugs, Ed, and asked defense counsel if he was ready to proceed. ECF No. 102, at 179-81. He confirmed that he was ready to proceed with trial and did so. *Id.* Defense counsel then effectively

1  used the excerpts that were disclosed to him to impeach Mr. Duenas' testimony. *See* ECF No.

2  100, at 195-96. The timing of the prosecution and the court's disclosures were sufficient because

3  Defendant was in possession of the relevant exculpatory and impeachment material, reviewed it,

4  and made effective use of it at trial.

5  **C.  REQUEST FOR HEARING ON THE MOTION TO DISMISS**

6        Defendant asserts that a hearing must be held to (1) determine "the extent of the

7  government's violation of the [Brady Disclosure] Order[,]" and (2) determine "the motives for

8  the government request to dismiss the indictment pursuant to Rule 48(a)." ECF No. 108, at 6-7.

9  He cites *United States v. Olmos-Gonzales* to argue that the government must provide more than a

10  conclusory statement that it is moving to dismiss in the best interest of the public. 993 F. Supp.

11  2d 1234, 1235-36 (S.D. Cal. 2014); ECF No. 108, at 7. According to Defendant, the prosecution

12  was acting in bad faith "to cover up its *Brady* violations by dismissing this matter without

13  prejudice." Additionally, Defendant contends that the prosecution cannot be permitted to dismiss

14  without prejudice as a delay tactic to gain a tactical advantage. ECF No. 108, at 8.

15        The court has already conducted an *in camera* review to determine whether there were

16  Jencks Act or *Brady/Giglio* violations. *See* ECF No. 102, at 143-75. During the review, the court

17  questioned the prosecution about Jencks Act and *Brady* material it had found in the transcript of

18  Mr. Duenas' interviews and ordered the prosecution to turn over evidence that it had found to be

19  potentially exculpatory or impeachment evidence. *See* ECF No. 102, at 143-75; *See* Gov't. Ex.

20  38. As a result, further hearing to determine the extent of any alleged *Brady* violations is

21  unnecessary. The court finds that the prosecution was not acting in bad faith, and that it took

22  proper steps to ensure that the Defendant received exculpatory or impeachment evidence while

23  protecting its ongoing criminal investigations.

24

### D. DISMISSAL WITH PREJUDICE

According to Defendant, the court's pretrial Brady Disclosure Order and Federal Rule of Criminal Procedure 48(a) "requires the Court to dismiss with prejudice the government's voluntary dismissal where the dismissal is requested in bad faith, improper purpose, or to gain a tactical advantage." ECF No. 108, at 5. He asserts the "failure to disclose was intentional and motivated by a desire to keep secret the government's investigation into the widespread and longstanding dealing of drugs at DOC by both staff and inmates." *Id.*

Dismissal with prejudice is inappropriate in this case. "A district court may dismiss an indictment for government misconduct for one of two reasons, each with its own standard: either because it finds a serious due-process violation or because it concludes that dismissal is warranted under its supervisory powers." *United States v. Bundy*, 968 F.3d 1019, 1030 (9th Cir. 2020) (citing *United States v. Kearns*, 5 F.3d 1251, 1253 (9th Cir. 1993)). First, a district court may dismiss an indictment for a due process violation if the prosecutor's conduct is "so grossly shocking and outrageous as to violate the universal sense of justice." *See id.* (citing *United States v. Green*, 962 F.2d 938, 942 (9th Cir. 1992)) (discussing how this typically involves "physical or mental brutality" from law enforcement or "where the crime is 'manufactured by the government'"). The prosecution's conduct here does not reach the level of grossly shocking or outrageous so as to warrant a dismissal with prejudice. *See United States v. Green*, 962 F.2d 938, 941-42 (9th Cir. 1991) (holding that a government official covertly taping a law firm's phone call did not merit the dismissal of the case for a Fifth Amendment due process violation even though it was "less than exemplary official performance" because it did not justify "the extreme measure of dismissing the indictment.") In the case at bar, a criminal investigation was ongoing, and the information contained in the transcript was not fully developed. *See* Sealed Gov't. Ex. 36; ECF No. 102, at 143-75.

Secondly, "[a] district court may dismiss an indictment under its inherent supervisory powers '(1) to implement a remedy for the violation of a recognized statutory or constitutional right; (2) to preserve judicial integrity by ensuring that a conviction rests on appropriate considerations validly before a jury; and (3) to deter future illegal conduct.'" *Bundy*, 968 F.3d at 1030 (quoting *United States v. Struckman*, 611 F.3d 560, 574 (9th Cir. 2010)). The court can dismiss a case under its supervisory powers even if the violation would not merit a dismissal as a due process violation. *See id.* However, a district court must appropriately tailor its remedies and, when considering whether to dismiss with prejudice, it must "have concluded that there is 'no lesser remedial action' available to it." *Id.* (quoting *United States v. Chapman*, 524 F.3d 1073, 1087 (9th Cir. 2008)); *see also United States v. Isgro*, 974 F.2d 1091, 1098 (9th Cir. 1992) ("[T]he Supreme Court as well as the Ninth Circuit has repeatedly pointed out that dismissal of an indictment, particularly with prejudice, is a drastic measure.").

The Ninth Circuit has held that for a district court to "dismiss an indictment with prejudice for prosecutorial misconduct" under its supervisory powers, it must find that there is both "(1) flagrant behavior and (2) substantial injustice." *Id.* (quoting *Kearns*, 5 F.3d at 1253). In *United States v. Bundy*, the government failed to disclose evidence that would have undermined the government's indictment, opening statement, and "the government's central theory of the case." *Id.* at 1044-45. The government made misrepresentations to the court which the court relied upon in issuing an order that limited testimony. *Id.* at 1035. The government then "blamed the defense for not requesting more specific information." *Id.* at 1044.

Here, contrary to Defendant's claims, the prosecution was not motivated by a desire to keep secret the government's investigation. ECF No. 108, at 5. In fact, the prosecution followed the proper protocol and filed an *Ex Parte* Motion for *In Camera Inspection* prior to trial. ECF No. 64. The prosecution disclosed pages of the transcript containing exculpatory and impeaching

statements made by Defendant's co-defendant, Mr. Duenas, before trial. Gov't. Ex. 37, ECF No. 79-1, at 2-4. The prosecution requested an *in camera* review of the transcript during trial with the court. *See* ECF No. 102, at 143-75. The prosecution was forthcoming with the court and sought to follow the court's Brady Disclosure Order. *See* ECF No. 64, at 2. Dismissal with prejudice "is a drastic measure" and it would be inappropriate here where the prosecution had taken proactive measures to ensure that they followed the proper procedures. *Isgro*, 974 F.2d at 1098.

## IV.  <u>CONCLUSION</u>

For the above stated reasons, the court hereby denies Defendant's Motion to Dismiss with Prejudice.

**SO ORDERED.**



**/s/ Frances M. Tydingco-Gatewood**
   **Chief Judge**
**Dated: Feb 19, 2026**